IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Alicia Revely, | ) |
| | ) |
|       Plaintiff, | ) Case No. 1:13-CV-353 |
| | ) |
|   vs. | ) |
| | ) |
| Cincinnati State Technical and Community College, | ) |
| | ) |
|       Defendant. | ) |

**O R D E R**

This matter is before the Court on Defendant Cincinnati State Technical and Community College's motion for summary judgment (Doc. No. 35). Reviewing the record in the light most favorable to the Plaintiff, and giving her the benefit of all reasonable inferences, the Court concludes that Defendant is entitled to summary judgment. Accordingly, for the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED.**

Plaintiff Alicia Revely, an African-American female, was a tenure-track marketing and management instructor at Defendant Cincinnati State Technical and Community College ("Cincinnati State") until the college non-renewed her teaching contract after the fifth year of the six-year tenure process. According to Cincinnati State, it decided not to renew Plaintiff's contract for the sixth year because it had decided not to grant her tenure because of her deficient performance as a faculty member. Plaintiff's alleged failings as a faculty member principally involved out-of-class activities, such as not fulfilling her duties as a student advisor, failing to attend staff meetings, and failure to adequately participate in faculty and student activities.

Plaintiff contends that Cincinnati State decided to not to renew her teaching contract because of her race and gender.  The problem with Plaintiff's Title VII employment discrimination claims, however, is that she has not presented any direct evidence of discrimination <u>and</u> she was replaced by another African-American woman, Lesli Rice. Doc. No. 35-3, at 2. Thus, as Cincinnati State argues in its motion for summary judgment, Plaintiff cannot establish a prima facie case of employment discrimination.  <u>See</u>, <u>e.g.</u>, <u>Loyd v. Saint Joseph Mercy Oakland</u>, 766 F.3d 580, 589 (6th Cir. 2014) (female African-American could not establish prima facie case of race or sex discrimination "because the record shows that Loyd was replaced by an African–American woman").  Plaintiff argues that a reasonable juror could find that Cincinnati State hired Rice in order to conceal its animus toward her based on the length of time it took Cincinnati State to hire Rice. Plaintiff, however, fails to cite any evidence which suggests that the length of time it took to hire Rice was unusual or otherwise is indicative of intent to disguise illegal discrimination against her.

Additionally, Plaintiff has not pointed to any evidence showing that similarly-situated white or male tenure-track instructors were treated more favorably than she was with respect to the renewal of a teaching contract, or more accurately, whose teaching contracts were renewed despite having the same or similar performance deficiencies. Consequently, Plaintiff cannot establish a prima facie case of race or gender discrimination.  <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995)(plaintiff can demonstrate fourth prong of prima facie case of discrimination by showing that she was replaced by a person outside of the protected class or by showing that similarly-situated non-protected employees were treated more favorably).

To make up for her inability to demonstrate the last prong of a prima facie case of discrimination according to the traditional mode, Plaintiff tries to rely on statistical data which she claims shows a disproportionate race and gender population at Cincinnati State among tenured and tenure-track instructors. Plaintiff's statistical evidence fails to show any gender or racial disparity indicative of discrimination.  In fact, as far as alleged gender discrimination goes, the record shows more tenured female instructors (15) than tenured male instructors (11).  Doc. No. 28-2, at 2-3.  The statistical evidence, moreover, does not support a case of racial discrimination with respect to tenure decisions.  The pool indicates ten African-American instructors.  Of this subset, four instructors received tenure, one instructor's tenure application was under review, one instructor resigned, one instructor retired, and one instructor moved from teaching to administration.  Id.  Plaintiff and one other African-American instructor had their contracts non-renewed.  Id.  The only other instructor not to have her contract renewed was a white female.  No reasonable juror could infer discriminatory animus against women or African-Americans from this data, particularly inasmuch as tenured female instructors outnumber tenured male instructors.  While it is true that two African-American instructors were non-renewed versus one Caucasian instructor, the sample size is too small to infer that racial animus accounts for the discrepancy.  Moreover, Plaintiff has not provided evidence that the racial disparity is statistically significant.  Simpson v. Midland-Ross Corp., 823 F.2d 937, 943-44 (6th Cir. 1987); id. at 944 ("For statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.")(internal quotation marks omitted); Hilbert v. Ohio Dept. of Rehab. & Corr., 121 Fed. Appx. 104, 110 (6th Cir. 2005) (statistical data must not

only show a significant disparity between two groups, but must also eliminate the most common nondiscriminatory explanations for the disparity")(internal quotation marks omitted).

Plaintiff claims further, however, that Cincinnati State non-renewed her because she is a lesbian and did not conform to a stereotypical female gender role. Plaintiff's problem with this line of attack, however, is that other than her self-described "non-gender-normative" style of dress, she has not identified any evidence that indicates that Cincinnati State was motivated not to renew her contract because of her failure to conform to its perception of a stereotypical female gender role. Plaintiff, for instance, has not pointed to any evidence that anyone at Cincinnati State ever commented unfavorably about her style of dress or believed that her appearance and demeanor were too masculine or insufficiently feminine. Compare to Price Waterhouse v. Hopkins, 490 U.S. 228, 235 (1989) (female accounting executive was described by partners as "too macho" and was encouraged to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry"); Smith v. City of Salem, 378 F.3d 566, 571 (6th Cir. 2004) (co-workers of plaintiff, who was a male-to-female transsexual firefighter, commented that his appearance and mannerisms were not masculine enough and supervisors conspired to compel his resignation "by forcing him to undergo multiple psychological evaluations of his gender non-conforming behavior"); Barnes v. City of Cincinnati, 401 F.3d 729, 738 (6th Cir. 2005)(police officer, a male-to-female transsexual, was criticized for not being sufficiently masculine and for lacking "command presence"). Indeed, in her deposition, Plaintiff admitted that no one ever made inappropriate comments about her appearance. Plaint. Dep. (Doc. No. 26), at 105-06, 122-23. This case is essentially on all-

fours with Dawson v. Bumble & Bumble, 398 F.3d 211, 221-23 (2nd Cir. 2005), where a lesbian's mannish appearance and style of dress were insufficient to establish a sex stereotyping claim because the plaintiff failed to show that her employer treated her discriminatorily because of her appearance. Finally, Plaintiff has not pointed to evidence that Rice, her replacement, conforms to a female gender stereotype. Myers v. Cuyahoga County, Fed. Appx. 510, 519 (6th Cir. 2006) (plaintiff could not establish prima facie sex stereotyping claim where she failed adduce evidence that her replacement was gender-conforming). This failing also defeats Plaintiff's sex stereotyping claim.

As Cincinnati State also accurately argues, in reality, Plaintiff is claiming that she was terminated because of her sexual orientation, a personal characteristic that Title VII does not protect against employment discrimination. Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 762 (6th Cir. 2006); Gilbert v. Country Music Ass'n, Inc., 432 Fed. Appx. 516, 519 (6th Cir. 2011). The fact that other administrative and faculty members were aware of her sexual orientation cannot be transformed into a basis for finding that Cincinnati State decided not to renew her teaching contract because she failed to conform to a female gender stereotype. See Vickers, 453 F.3d at 764 (noting that "all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices").

5

Conclusion

Accordingly, for all of the above reasons, Cincinnati State is entitled to summary judgment on Plaintiff's race and gender discrimination claims.  Cincinnati State's motion for summary judgment is well-taken and is **GRANTED**.  The complaint is **DISMISSED WITH PREJUDICE.**

   **IT IS SO ORDERED**

Date November 4, 2014            s/Sandra S. Beckwith
                      Sandra S. Beckwith
                 Senior United States District Judge